SMEDLEY *v.* MASHEK CHEMICAL & IRON CO.

MASTER AND SERVANT — PERSONAL INJURIES — VOLUNTEER — EXISTENCE OF RELATION.

.    On account of an alleged defective ladder that gave way with plaintiff while he was helping to put out a fire on defendant's premises, whither he had been drawn out of curiosity upon hearing the fire alarm, no recovery for injuries sustained in rendering such voluntary aid to defendant would be authorized. Plaintiff should not have been permitted to go to the jury, in the absence of any contract of hiring between the parties averred in the pleadings or shown by the proofs, and merely upon the theory that he was obeying orders of the superintendent of defendant's plant; the burden resting on an employee to prove the contract of employment relied upon.[1]

Error to Delta; Flannigan, J. Submitted October 11, 1915. (Docket No. 41.) Decided December 21, 1915.

Case by James Smedley against the Mashek Chemical & Iron Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed; new trial refused.

*Keena, Lightner, Oxtoby & Hanley,* for appellant.
*N. C. Spencer,* for appellee.

STONE, J. The facts in this case are very simple. At the time of the injury complained of, the plaintiff was in the employ of the Stephenson Charcoal & Iron Company at Wells, Delta county. Its plant adjoined the plant of the defendant company. On June 15, 1914, at 2 o'clock p. m., the plaintiff had finished his

[1] As to who is a volunteer, see note in 16 L. R. A. 861.
On the liability of master for injury to volunteer, see notes in 22 L. R. A. 664, 13 L. R. A. (N. S.) 561, 43 L. R. A. (N. S.) 187, L. R. A. 1915F, 1125.

work for the Stephenson Company and had gone home.
He soon heard the fire whistle blow, and thinking there
must be a big fire by the way they blew the whistle—
a general alarm—he went over to the defendant's
plant, "through curiosity to see what was going on."
At that time the fire was burning along the tracks of
the defendant company, and along the charcoal cars,
and the sawdust cars. Plaintiff walked around among
where the men were working at different points of the
fire, and finally went up to what appeared to be the
worst place at the time—the fire in the sawdust cars
alongside of the storage house—and he saw them tak-
ing the hose around there, and he testified: "We tried
to put out the fire." Continuing, plaintiff testified:

"I saw a man by the name of Ballard, and Mr. Rob-
erts. Ballard is the yard foreman, or at least a fore-
man of the Mashek Chemical Company, and I under-
stood Mr. Roberts was general superintendent or su-
perintendent of the Mashek Chemical & Iron Company.
They motioned for me to come and take hold of the
hose. Mr. Roberts motioned. I went and took hold
and helped them for perhaps a half or three-quarters
of an hour, as near as I can remember, at different
points of the fire around the cars and engine house.
Then they put a ladder up against one of the cars. I
think, as near as I recall, Mr. Roberts did it, or at
least some of the men that he told. I heard
him tell them to put it up. It was put there to
take the hose up. The sawdust was burning inside
the car, and they wanted us to go up there, as I under-
stood, and get on top of the sawdust, and wet it down
around the edge of the car to keep the car from burn-
ing. Well, I was working. There was another gentle-
man ahead of me, and I was helping him drag the hose
up there. We had been together, and I was waiting for
him to go on up the ladder and started up the ladder
with the nozzle of the hose. He went up the ladder at
Mr. Roberts' direction. He went up the ladder to put
water on the sawdust. I don't recall, now, who the
man was. I wanted to let the man go up the ladder,

and I was going to help him pull it up, and I was helping what little I could, and I was told then by Mr. Roberts to go on up there. When I started up, the man was a little past the middle of the ladder—I should judge toward the top. I had a hold of the hose. Then I started up the ladder, but I did not pull the hose. I stepped up a couple of steps, and then started to pull the hose up, and I was right within about six feet of this man. I should judge the car was 14 or 16 feet from the ground up. I started to pull this hose up, and this man ahead of me, he was just about to step on top of the car, that is, he was within a step or two of the top when I started to step up one step higher, because I heard Mr. Roberts tell another man to go up the ladder to get the hose up there, and I saw that this man was about to come up the ladder, and I made one step like that; I remember raising my foot to step up, one step up, when the ladder broke, and I fell to the ground."

Nowhere in the declaration is the claim made that plaintiff was an employee of the defendant. It is alleged that he was called upon by defendant for assistance; that the plaintiff responded to the request, and undertook to assist in and about the extinguishment of the fire; that the fire spread to the said car loaded with sawdust; that said defendant thereupon requested and directed said plaintiff to ascend the ladder; and that the plaintiff undertook to comply with said request. It is further alleged that it was the duty of the defendant to provide a ladder for the said plaintiff, which was free from defects and knot holes, and of sufficient strength to bear the weight of the plaintiff and other persons in going onto the said car of sawdust.

The plaintiff produced evidence tending to show that the ladder was defective in the particular named, to wit, because of a knot hole, and that he was injured by falling from the ladder. Mr. Roberts, the assistant superintendent of the defendant, testified that he did not hire the plaintiff for the defendant, or at all, and

that he did not give him any orders to do anything for the defendant.

The trial court charged the jury as follows:

"The first question which you naturally will consider when you go to your jury room will be whether or not the plaintiff was in the employ of the defendant company at that time. You have heard what the plaintiff claims was said to him by Mr. Roberts. You have heard what Mr. Roberts has had to say respecting the matter. It is conceded that Mr. Roberts had authority to employ the plaintiff, or any one else, to assist in putting out that fire, if he saw fit to do so. The question is: Did he employ the plaintiff, or did the plaintiff volunteer to assist in putting out that fire? In order, gentlemen, that you may find that the plaintiff was in the employ of the defendant company at that time, you must be able to say by a preponderance of evidence that Mr. Roberts intended to hire the plaintiff to work on the fire, and that the plaintiff accepted the employment. In order for the plaintiff to say he was working for the chemical company, you must find that a contract of hiring existed; in other words, you must be able to say that the minds of both parties, Mr. Roberts and the plaintiff, met at that time, and that Mr. Roberts understood that he was hiring the plaintiff, and that the plaintiff understood that Mr. Roberts was hiring him. If, as I said, the fact was that the plaintiff merely volunteered to assist in extinguishing the fire, then, no matter how the injury happened, the defendant in this case would not be liable. Now, what is the fact about that? Did the plaintiff go down there merely to look on, or did he enter upon the business of extinguishing the fire only after he understood that Mr. Roberts had hired him to assist in putting out the fire? Did Mr. Roberts himself understand that he was hiring the plaintiff, and that the plaintiff understood that he was being hired to put out the fire? In other words, did the minds of these two men get together on the contract of hiring? Unless you are able to say that, gentlemen of the jury, and to say that by a preponderance of the evidence in the case, you have finished your consideration of this case; because it would then be your duty to find a verdict for the defendant.

If the plaintiff, simply being there, entered upon the business of putting out the fire voluntarily, like you and I might, in case we rushed out to a fire, and that is all there was of it, and he was injured, he would have no claim against the defendant."

At the conclusion of the plaintiff's testimony, and again at the conclusion of all the testimony, the defendant requested the court to direct a verdict for·the defendant for several reasons, among which was the reason that no relationship of master and servant was established by the plaintiff. The trial court declined to direct a verdict, and submitted the case to the jury; the trial resulting in a verdict and judgment for the plaintiff in the sum of $1,200 damages. The defendant has brought the case here for review, and, by a proper assignment of error, it presents the question above stated, among others.

The rule seems to be well settled that where, in an action for personal injuries, it is sought to charge one as master, plaintiff must show that, at the time of the alleged injury, the relation of master and servant existed between the parties. 26 Cyc. p. 1082, and cases cited. The trial court recognized the rule as appears by the part of the charge above quoted.

We have examined this record carefully, and are unable to find any evidence that warranted the court in submitting that question to the jury. There is no evidence in the case showing any contract of employment by the defendant, with the plaintiff, and in our opinion the trial court erred in submitting the case to the jury on any such theory. The plaintiff was, according to this record, a mere volunteer, and the trial court instructed the jury that:

"If the plaintiff, simply being there, entered upon the business of putting out the fire voluntarily, like you and I might, in case we rushed out to a fire, and that is all there was of it, and he was injured, he would have no claim against the defendant."

That was the real situation, and a verdict should have been directed for the defendant.

For this error the judgment of the circuit court is reversed, and there will be no new trial.

BROOKE, C. J., and PERSON, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.